# Commonwealth of Pennsylvania *v.* Philadelphia Electric Company, Appellant.

594

Argued June 5, 1975, before President Judge Bowman and Judges Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Crumlish, Jr. did not participate.

*T. Roberts Appel, II*, with him *Roberts R. Appel, Appel, Herr & Appel*, and, of counsel, *Edward G. Bauer, Jr.* and *Eugene J. Bradley*, for appellant.

*Vincent J. Dopko*, Deputy Attorney General, for appellee.

Opinion by Judge Blatt, November 13, 1975:

In this action we are asked to determine whether under the Public Utility Realty Tax Act.[1] (PURTA), the

---

1. Act of March 10, 1970, P.L. 168, *as amended*, 72 P.S. §3271 et seq.

dam, dikes, and canal of a pump storage hydroelectric generating plant owned by a public utility constitute machinery and equipment or utility realty.

The utility here, the Philadelphia Electric Company (Philadelphia Electric), manufactures electricity through steam generators, nuclear power plants, hydroelectric dams, diesel turbines, and pump storage projects, all of which are interconnected into a single electric generating system. The "Muddy Run Pump Storage Hydro-Electric Project" (Muddy Run) in Lancaster County is one part of this generating system. A pump storage hydroelectric project, such as the one at Muddy Run, manufactures electricity by means of water flowing by gravity from a high level reservoir through turbines to a low level reservoir. The falling water drives the turbines, the turbines drive the generators, and the generators then manufacture the electricity. It is necessary in such a project, of course, to create a source of high level water sufficient to achieve the gravitational waterflow needed to drive the turbines. Once the high level reservoir is created, it is then maintained by operating the pump storage project in reverse during periods of low electrical demand, usually during nights and on weekends. The reverse process involves the application of outside electricity to the generators which act as motors to drive the turbines which act as pumps to return water back to the high level reservoir.

To build the Muddy Run project, Philadelphia Electric acquired land on both sides of a stream known as Muddy Run, which flows through a ravine between high bluffs running to the Susquehanna River in Lancaster County. Approximately one-half mile from the mouth of the stream a dam was erected to close the ravine, and small dikes were built to give added elevation to one of the bluffs. The dam and dikes created the high level reservoir. A canal was then constructed in one of the high bluffs to channel water from the high level reservoir through

a conduit system leading to the turbine units of the generating equipment and eventually to the Susquehanna River, the low level reservoir below.

Under PURTA a tax payable to the state treasurer is imposed upon utility realty. In its tax returns for the years 1970 and 1971, Philadelphia Electric included the value of the dam, dikes, and canal as utility realty under PURTA and paid $924,179.00 to the state treasurer. The company, however, filed a petition for refund with the Board of Finance and Revenue (Board) because there had previously been no authoritative determination as to whether or not these dams, dikes and canal constitute utility realty subject to taxation under PURTA or are excluded from such tax under PURTA as machinery and equipment. The Board ruled that these appurtenances are utility realty and has, therefore, denied the refund. Philadelphia Electric now appeals to this Court arguing that the dams, dikes and canal constitute machinery and equipment and are not to be included as taxable utility realty under PURTA. We disagree and, therefore, must affirm the Board.

The question here presented is apparently one of first impression in our appellate courts. As defined in Section 2(c) of PURTA, 72 P. S. §3272(c), utility realty:

> ". . . means all lands, buildings, towers, smokestacks and other structures, located within this commonwealth and owned by a public utility either directly or by or through a subsidiary, which are used or are in the course of development or construction for use, in the furnishing, including producing, storing, distributing or transporting, of public utility service; but shall not include (i) easements or similar interest, (ii) railroad rights-of-way and superstructures thereon, (iii) machinery, equipment, pole, transmission tower, pipe, rail or other lines, whether or not attached to such lands, buildings, towers, smokestacks or other structures, and (iv) such realty as is subject

to local real estate taxation under any law in effect on April 23, 1968." (Emphasis added.)

In *Safe Harbor Power Corporation,* 55 Pa. D&C 2d 591 (1972), the Court of Common Pleas of Lancaster County was confronted with a similar question and excluded the dam there concerned from taxation under PURTA. That court ruled that the dam in *Safe Harbor* was machinery and equipment rather than utility realty and that it was, therefore, not taxable under PURTA. There the dam had been constructed across the Susquehanna River and was used to generate electricity. In determining that this dam was machinery and equipment the court relied upon prior judicial interpretation of a similar real estate tax statute, the General County Assessment Law,[2] wherein it is stated that "[m]achinery, tools, appliances and other equipment contained in any ... industrial establishment shall not be considered or included as a part of the real estate in determining the value" of the establishment for local real estate tax purposes. Section 201 of the General County Assessment Law, 72 P. S. §5020-201. In the cases cited in *Safe Harbor* and also cited by Philadelphia Electric herein, our Supreme Court described the difference between taxable realty and tax-exempt machinery and equipment under the General County Assessment Law as follows:

"[I]mprovements, whether fast or loose, which (1) are used directly in manufacturing the products that the establishment is intended to produce; (2) are necessary and integral parts of the manufacturing process; and (3) are used solely for effectuating that purpose are excluded from real estate assessment and taxation. On the other hand ... improvements which benefit the land generally and may serve various users of the land are subject to taxation." *United States Steel Corporation v. Board of Assessment and Re-*

2. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-101 et seq.

*vision of Taxes of Bucks County,* 422 Pa. 463, 467-468, 223 A.2d 92, 95 (1966); *accord, Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961).

In both of these cases just noted, the Supreme Court concluded that large, heavy apparatus used in the manufacture of steel and securely entrenched with solid foundations constituted items of machinery and equipment for purposes of local taxation. Similarly, it held that large oil refinery storage tanks were machinery and equipment for purposes of taxation in *Gordon Lubricating Company v. Allegheny County Board of Property Assessment Appeals and Review,* 204 Pa. Superior Ct. 441, 205 A.2d 704 (1964) and also in *Gulf Oil Corp. v. Philadelphia,* 357 Pa. 101, 53 A.2d 250 (1947).

In the light of these decisions, we believe that the dam, dikes, and canal of the Philadelphia Electric Muddy Run Project would probably be exempt from local real estate taxation under the General County Assessment Law. We do not believe, however, that the interpretation of the machinery and equipment exclusion under local realty assessment law necessarily controls the meaning of the exclusion under PURTA.

We recognize that PURTA provides that utility realty shall be assessed in the same *manner* as is provided for the assessment and valuation of real estate under general assessment laws, Section 5(a) of PURTA, 72 P. S. §3275(a), but this provision should not be understood to mean that property which constitutes real estate under the local assessment law must also be deemed to constitute utility realty under PURTA. PURTA merely provides a "manner" or a way by which property shall be assessed once it has been determined to be utility realty included under the Act.

PURTA expressly designates that various "structures" used in the furnishing of the utility service shall be deemed "utility realty." The general assessment laws, on

the other hand, fail to describe with such refinement the type of property which shall constitute taxable realty. The Supreme Court, therefore, has judicially refined the definition of utility realty under those statutes and has concluded that structures used directly for, as an integral part of, and solely in the manufacturing process do not constitute taxable realty but fall within the machinery and equipment exclusion. We believe that much of the property thus described by the Supreme Court as machinery and equipment under general assessment laws would clearly constitute "utility realty" as described under ·PURTA.

We must hold, therefore, that the dam, dikes, and canal of the Muddy Run Pump Storage Hydro-Electric Project operated by the Philadelphia Electric Company constitute taxable utility realty under the Public Utility Realty Tax Act because they clearly are structures which are used in the furnishing of utility service. Accordingly, we issue the following

### ORDER

AND, NOW, this 13th day of November, 1975, the decision and order of the Commonwealth of Pennsylvania, Board of Finance and Revenue, is hereby affirmed.