Glenside Suburban Radio Cab, Inc., Jenkintown Cab Company, Russell Maxwell, Jr., t/d/b/a Abington Taxicab Co. and Jenkintown Taxi Service, Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

524

Argued February 4, 1980, before Judges CRUM-LISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Herbert Somerson,* for appellants.

*Robert A. Christianson,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel and *George M. Kashi,* Chief Counsel, for respondent.

*Anthony C. Vance,* with him *Harry F. Goldberg,* for Ashbourne Transportation, Inc., intervenor.

OPINION BY JUDGE WILKINSON, JR., February 29, 1980:

Protestants (Petitioners) seek review of a final order of the Pennsylvania Public Utility Commission

(Commission) in which a stipulation offered by Petitioners and Ashbourne Transportation, Inc. (Ashbourne) was rejected, and Petitioners' request that the record be reopened was also denied. We affirm.

For purposes of the present appeal, the facts are not disputed and can be briefly summarized. By virtue of a certificate of public convenience granted by the Commission effective September 27, 1976, Ashbourne was authorized to "transport, as a common carrier, persons [1] in the township of Cheltenham, Montgomery County, under contract with said township and with payment by said township or some other municipal, county, state or federal agency or authority" over certain routes. On February 14, 1978, Ashbourne filed an application to amend its certificate of public convenience to allow minor changes in scheduled routes. Duly advertised, the application to amend was challenged by Petitioners, four certificated carriers serving in the area.

Following negotiations, Petitioners agreed to withdraw their protests "provided that the rights requested be amended" to include the following:

At such time as the subsidies cease from either the local, state or federal government so that the service of applicant is no longer funded, applicant will turn his certificate back to the Pennsylvania Public Utility Commission for cancellation, and will not attempt to modify it or change it into a bus route certificate for hire as a common carrier.

The Commission approved the application for amended route authorization in an order nisi adopted

---

[1] Although the certificate of public convenience is not so limited it appears from the record that Ashbourne's contract with Cheltenham Township is for the transportation of ambulatory handicapped and senior persons in the community.

August 24, 1978 and entered September 8, 1978, but rejected the stipulation "since it is not in the public interest." Petitioners filed exceptions which were denied in the Commission's Final Order adopted November 16, 1978 and entered November 24, 1978.

Petitioners first challenge the Commission's refusal to accept the parties' stipulation. In short answer we would note that the Commission is not bound by stipulations or restrictive amendments submitted by parties before it. *See Federal Reserve Bank of Philadelphia v. Pennsylvania Public Utility Commission,* 15 Pa. Commonwealth Ct. 360, 326 A.2d 643 (1974).

Section 1103 of the Public Utility Code (Code), 66 Pa. C.S. §1103 sets out the procedure for obtaining certificates of public convenience:

A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. *The commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.* (Emphasis added.)

The power to impose just and reasonable conditions necessarily implies the power to reject conditions, even if imposed by agreement of the parties, which the Commission deems to be unjust and unreasonable. The regulations governing practice and procedure before the Commission, 52 Pa. Code §3.1 et seq., confirm our interpretation of the Commission's power with respect to stipulations.

§3.241. Stipulations generally.

(a) The participants may stipulate as to motor carrier rights.

(b) The Commission may disregard in whole or in part any stipulation of facts under 1 Pa. Code §35.155 (relating to presentation and effect of stipulation) or any stipulation under subsection (a) of this section. . . .

52 Pa. Code §3.241.

The rationale for such discretion can be found in Judge WOODSIDE's observation that "[t]he primary object of the Public Utility [Code] is not to establish monopolies or to guarantee the security of investments in public service corporations, but to serve the interests of the public." *Highway Express Lines, Inc. v. Pennsylvania Public Utility Commission,* 195 Pa. Superior Ct. 92, 100, 169 A.2d 798, 802 (1961).

The following observations of a federal judge concerning the power of the Interstate Commerce Commission to accept or reject stipulations are equally pertinent in the present context.

[A]n application before the ICC is unlike pleadings and motions tendered in a lawsuit. Courts will normally accept the stipulations and restrictions under which the parties agree to try a case. A court's function, under our adversary system, is to resolve the dispute as it is presented by the parties. The court will not superimpose the interests of a third party upon the litigants unless, in those rare instances, their interests run afoul of what is called 'public policy'.

The ICC, on the other hand, is required to represent the public, a third party, when it grants or denies certificates of public convenience and necessity. In this capacity, it cannot defer to the parties and permit them to define the metes and bounds of the controversy.

*Frozen Food Express, Inc. v. United States,* 328 F. Supp. 666, 670 (N.D. Tex. 1971).

We perceive no abuse of the Commission's inherent and statutory authority in its rejection of the proffered stipulation.

Petitioners' final argument assails the propriety of the Commission's refusal to reopen the record following its rejection of the stipulation upon which Petitioners' withdrawals of protest had been predicated.

The Commission, in passing upon an application for a certificate of public convenience, is invested with power to conduct investigations and hearings. Section 1103(b) of the Code, 66 Pa. C.S. §1103(b) provides: "For the purpose of enabling the commission to make such finding or determination, *it shall hold such hearings . . . as it may deem necessary or proper* in enabling it to reach a finding or determination." (Emphasis added.) The discretionary nature of the Commission's authority with respect to hearings in the present context is made explicit in subsection (b) of the Commission's regulation at 52 Pa. Code §3.241. "[The Commission] may grant further hearing if requested by a party to the stipulation within 15 days after issuance of a Commission order disregarding the stipulation of fact or disposing of the motor carrier case."

It becomes apparent after a consideration of some of the underlying circumstances in this case that the Commission did not abuse its discretion in refusing to reopen the record. It should be remembered that Ashbourne's application in this case sought only to effect certain minor changes in its authorized routes for the convenience and accommodation of its passengers. In addition, at the time of Ashbourne's original application in 1976, the Commission rejected similar language intended to freeze Ashbourne's authority to the provision of government-funded transportation and to preclude future conversion to public transportation for hire. Petitioners were aware therefore of the like-

lihood of Commission rejection of the stipulation. Finally, and most importantly, it should be realized that any such conversion of Ashbourne's authority must be accomplished by means of a new application before the Commission at which time Petitioners will be afforded an opportunity to voice their objections.

We are in agreement with the federal court in *Frozen Food Express, Inc., supra,* that a party who withdraws its protest in reliance on a stipulation or restrictive agreement does so at its own risk and will not be heard to complain that it was denied an opportunity to actively oppose an application.

Accordingly, we will enter the following

ORDER

AND Now, February 29, 1980, the final order of the Pennsylvania Public Utility Commission at Application Docket No. 00099648, F.3 Am-A, adopted November 16, 1978 and entered November 24, 1978, is hereby affirmed.

President Judge BOWMAN did not participate in the decision in this case.

