Isadore Virgilli & Charlotte R. Virgilli, his wife v. Southwestern Pennsylvania Water Authority v. Mather Water Company. Mather Water Company, Appellant.

Argued November 18, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, WILLIAMS, JR. and PALLADINO. Judges MENCER and MACPHAIL did not participate.

*William Jon McCormick,* for appellant.

*C. Robert McCall,* with him *R. Robert Maxwell* and *Paul V. Mahoney, Maxwell & Davis,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, April 8, 1981:

This is an appeal by the Mather Water Company from a Greene County Common Pleas Court equitable decree directing Mather to pay arrearages owed on a delinquent water bill to Southwestern Pennsylvania Water Authority. We affirm.

Southwestern Pennsylvania Water Authority, a municipal authority created under the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §301 *et seq.*, wholesales potable water, by contract, to Mather Water Company, a privately-owned public utility serving retail customers in Mather, Pennsylvania.[1]

In September of 1978, Southwestern threatened to discontinue water service to Mather unless it paid an overdue water bill. As a result, Isadore and Charlotte R. Virgilli, retail customers of Mather, filed a complaint in equity in Greene County Common Pleas Court seeking an injunction restraining Southwestern from terminating wholesale water service to Mather.

Following a hearing, the court below temporarily enjoined Southwestern from discontinuing service and ordered Mather to pay into court the arrearages owed Southwestern. Southwestern then joined Mather in the equity action and Mather joined the Public Utility Commission as additional defendants. Responding to preliminary objections filed by Mather and the Commission, the court below dismissed the Commission for lack of jurisdiction and overruled Mather's objections challenging the court's equitable and subject matter jurisdiction.

On December 15, 1978, the court entered a decree nisi, which continued the injunction against South-

---

[1] Mather depends on its contract with Southwestern for all the water it resells to customers.

western, adjudged Mather indebted to Southwestern in the amount of $8,220.49, and ordered Mather's customer bills to be paid to a court-approved trustee to be designated in the event Mather did not pay its bill within 15 days.[2] After overruling Mather's exceptions to the decree nisi, the lower court made its decree final on January 26, 1979. This appeal followed.

Consistent with the preliminary objections and exceptions filed below, Mather contends that the Public Utility Code, Act of July 1, 1978, P.L. 598, *as amended,* 66 Pa. C. S. §§101 *et seq.,* and the decisions of our courts thereunder vest jurisdiction over this matter exclusively with the Commission. We disagree.

Although the public utility law grants to the Commission general supervisory and regulatory power over public utilities, 66 Pa. C. S. §501, the Code does not confer an exclusive jurisdiction to decide all matters involving regulated public utilities. On the contrary, except as otherwise expressly provided in the Code, the Commission's powers and duties do not "abridge or alter the existing rights of action or remedies in equity or under common or statutory law of this Commonwealth." 66 Pa. C. S. §103(c). In addition, our courts have construed the Public Utility Code as creating many areas of concurrent jurisdiction between the PUC and the Commonwealth's courts. *See, e.g., Rogoff v. Buncher,* 395 Pa. 477, 151 A.2d 83 (1959) ; *Leveto v. National Fuel Gas Distribution,* 243 Pa. Superior Ct. 510, 366 A.2d 270 (1976).

Consequently, we must determine whether the Public Utility Code vests the necessary jurisdiction with the Commission.

---

[2] Before 15 days had expired, the Court designated a trustee to collect the customer bills. After Mather appealed the overruling of its preliminary objections to this Court, the lower court stayed all proceedings pending the outcome of this appeal.

Initially, Mather unsuccessfully argues that the supply contract falls within the purview of Section 507 of the Code, 66 Pa. C. S. §507, which provides for Commission approval of a public utility-municipal corporation contract:

> *Except for a contract between a public utility and a municipal corporation to furnish service at the regularly filed and published tariff rates,* no contract or agreement between any public utility and any municipal corporation shall be valid unless filed with the commission at least 30 days prior to its effective date. Upon notice to the municipal authorities, and the public utility concerned, the commission may, prior to the effective date of such contract or agreement, institute proceedings to determine the reasonableness, legality or any other matter affecting the validity thereof. Upon the institution of such proceedings, such contract or agreement shall not be effective until the commission grants its approval thereof. (Emphasis added.)

A careful reading of Section 507 reveals that the contract between Mather and Southwestern is specifically exempted from PUC approval. Clearly, Mather is a "public utility" providing water service to the public for compensation, while Southwestern constitutes a "municipal corporation" under the Code as a public authority created and organized under the Municipality Authorities Act for the purpose of rendering water supply service similar to that of a public utility.[3] Furthermore, the Code does not grant the

---

[3] We naturally read the terms "public utility" and "municipal corporation" provided under Section 102 of the Code, 66 Pa. C. S. §102, in conjunction with Section 4 of the Municipality Authorities Act, 53 P.S. §306, as consistent with the express language in Section 507, 66 Pa. C. S. §507.

PUC general supervisory power over contracts involving public utilities. *See Leveto, supra; Myers v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 431, 65 A.2d 256 (1949). While Southwestern's claim may ultimately affect Mather's rates, such a result does not divest a common pleas court of its jurisdiction to resolve a private contract dispute.

Mather's alternative assertion that Southwestern has an adequate remedy at law is also without merit. Our courts have consistently held that equitable relief is available to prevent a multiplicity of lawsuits. *Luitweiler v. Northchester Corp.,* 456 Pa. 530, 319 A.2d 899 (1974); *Temple University v. Pennsylvania Department of Public Welfare,* 30 Pa. Commonwealth Ct. 595, 374 A.2d 991 (1977). Since Southwestern, if left to its legal remedy, would be forced to pursue a new lawsuit for each periodic accrual of charges against Mather, equity presents the most appropriate forum to prevent such multiplicity. To this same end, the well-established principle that provides equity jurisdiction with the power to do complete justice between the parties, paves the way to vindicate Southwestern's contract rights. *See McGovern v. Spear,* 463 Pa. 269, 344 A.2d 826 (1975); *Borough of Greentree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974).

Consequently, we must conclude that the Commission was not a necessary and indispensable party, and that the Greene County Common Pleas Court did not lack the necessary jurisdiction. Clearly, the Commonwealth should not be declared an indispensable party unless meaningful relief cannot be granted without the state being directly involved. *See Scherbick v. Community College of Allegheny County,* 479 Pa. 216, 387 A.2d 1301 (1978); *McDonough v. Commonwealth of Pennsylvania,* 26 Pa. Commonwealth Ct. 563, 364

A.2d 965 (1976).[4] Although we recognize the Commission's tangential interest in ensuring Mather's fiscal viability, the Commission's involvement is neither necessary nor indispensable to a fair and complete resolution of the parties' rights and responsibilities.

Affirmed.

### ORDER

The Greene County Common Pleas Court decision, dated January 26, 1979, is hereby affirmed.

Judge WILKINSON, JR. concurs in the result only.

This decision was reached prior to the expiration of the term of Judge WILKINSON, JR.

---

[4] Although our Supreme Court recently questioned the continuing validity of the traditional, indispensable party test, *Action Coalition of Elders v. Allegheny County Institution District et al. v. Beal* (No. 194 March Term 1979, filed February 4, 1980), we note that a newly formulated test failed to carry a majority of the Court.