100

Springdale Township *v.* Allegheny County Board of Property Assessment, Appeals and Review, et al. West Penn Power Company, Appellant.

Argued October 3, 1983, before Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*Michael W. Balfe, Rose, Schmidt, Dixon & Hasley,* with him *Edward S. Stiteler,* for appellant.

*William P. Bresnahan,* Assistant County Solicitor, with him *James H. McLean,* County Solicitor, *Patrick J. Lughney* and *William J. Fahey,* for appellees, County of Allegheny.

*John G. Arch,* for appellee, Springdale Township.

OPINION BY JUDGE CRAIG, October 26, 1983:

West Penn Power Company appeals from an order of the Court of Common Pleas of Allegheny County, which denied West Penn's motion to dismiss an appeal Springdale Township and Allegheny County had filed in that court challenging the tax exempt status of a portion of West Penn's property at its Springdale Power Plant. The court rejected West Penn's contentions that the Commonwealth was an indispensable party and that the Pennsylvania Public Utility Commission had exclusive jurisdiction of the case; those two issues are now before us on appeal.

The township had first appealed to the Allegheny County Board of Property Assessment, Appeals and Review, arguing that a segment of West Penn's property was not entitled to exemption from local taxation; the board denied the appeal, determining that the property in question was exempt because it was subject to taxation under the Public Utility Realty Tax Act, Act of March 10, 1970, P.L. 168, 72 P.S. §§3271-3278, amended and placed under the Tax Re-

form Code, Act of July 4, 1979, P.L. 60, 72 P.S. §§8101-A—8108-A (PURTA).

### 1. Background

The controverted property is that part of West Penn's Springdale operation, located in Springdale Township, which contains the coal storage and handling facilities. Because the plant switched from the use of coal to oil in 1974, those facilities are no longer in use. A plant building in the area contains several dismantled turbine generators, the water purification system, the laboratory and the plant office; it also provides storage space and serves as a base for large transmission towers. The plant's network of railroad sidings also passes through the disputed area.

### 2. Statutory Scheme

The township contends on the merits that West Penn's property is not properly included in PURTA because it does not meet the statutory definition of "utility realty".[1] Although we do not reach the merits of the exemption question in the current procedural

---

[1] 72 P.S. §8101-A(3) defines "utility realty", in relevant part, as follows:

All lands, together with all buildings, towers, smokestacks, dams, dikes, canals, cooling towers, storage tanks, reactor structures, pump houses, supporting foundations, enclosing structures, supporting structures, containment structures, reactor containment outer shells, reactor containment vessels, turbine buildings, recovery tanks, solid waste area enclosures, primary auxiliary buildings, containment auxiliary safeguard structures, fuel buildings, decontamination buildings, and, all other structures and enclosures whatsoever which are physically affixed to the land, no matter how such structures and enclosures are designated and without regard to the classification thereof for local real estate taxation purposes, but not including machinery and equipment, whether or not housed within such building, structure or enclosure, located within this Commonwealth and owned by a public utility either directly or by or through a sub-

posture, because the nature of the underlying question becomes dispositive, we must examine the applicable PURTA sections.

The courts have explained, in comprehensive detail, the history of both the 1968 constitutional amendment and PURTA, which implemented that amendment;[2] we will not repeat that history here. The basic effect is that utility realty which is subject to PURTA taxes is exempt from local taxes.[3] The State Treasurer, who collects the PURTA revenue from the utilities through the Department of Revenue,[4] distributes a portion of the amount collected to each local taxing authority[5] which has complied with PURTA's reporting requirements.[6] The ratio which the taxing authority's total tax receipts bears to the total tax revenues of all reporting taxing authorities determines the amount of reimbursement.[7]

Underlying the present dispute is the township's discontent with that reimbursement scheme. The

___

sidiary, which are used or are in the course of development or construction for use, in the furnishing, including producing, storing, distributing or transporting, of public utility service and which are not subject to local real estate taxation under any law in effect on April 23, 1968.

[2] *Duquesne Light Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 10 Pa. Commonwealth Ct. 41, 299 A.2d 660 (1973), rev'd sub nom. *American Telephone and Telegraph Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 461 Pa. 716, 337 A.2d 844 (1975).

[3] Article VIII §4 of the Pennsylvania Constitution and §1104-A of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, added by Act of July 4, 1979, P.L. 60, 72 P.S. §8104-A(a).

[4] Section 1102-A of the Tax Reform Code of 1971, 72 P.S. §8102-A(a).

[5] Section 1107-A of the Tax Reform Code of 1971, 72 P.S. §8107-A.

[6] Section 1106-A of the Tax Reform Code of 1971, 72 P.S. §8106-A.

[7] 72 P.S. §8107-A(b).

township would receive substantially more revenue if it were able to tax West Penn's property directly.[8]

### 3. Indispensable Party

West Penn contends here that the Commonwealth is an indispensable party because West Penn pays gross receipts taxes and PURTA taxes and because the property is included in its rate base. Therefore, West Penn argues, any change in the status of the property will affect state revenues, and that potential effect renders the Commonwealth indispensable to this action.

" 'In Pennsylvania, an indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction.' ''[9] We should not declare the Commonwealth an indispensable party unless meaningful relief could not conceivably be afforded without the state's direct involvement. *Virgilli v. Southwestern Pennsylvania Water Authority,* 58 Pa. Commonwealth Ct. 340, 427 A.2d 1251 (1981).

In the present case, meaningful relief may be accomplished through statutory interpretation of the

---

[8] The cases have established that the taxing authorities need not receive, through PURTA reimbursement, the precise amount they would have collected from a direct tax on the utility's property. *Southeast Delco School District v. Shapp,* 468 Pa. 475, 364 A.2d 292 (1976).

[9] *Scherbick v. Community College of Allegheny County,* 479 Pa. 216, 220, 387 A.2d 1301, 1303 (1978), quoting *Columbia Gas Transmission Corp. v. Diamond Fuel Co.,* 464 Pa. 377, 379, 346 A.2d 788, 789 (1975). Although our Supreme Court has criticized the traditional formulation of the indispensable party doctrine, *Action Coalition of Elders v. Allegheny County Institution District,* 493 Pa. 302, 426 A.2d 560 (1981), we note that a majority of the court failed to agree that reformulation of the test was necessary.

relevant sections of PURTA. That decision will leave the state's gross receipts revenues and West Penn's rate base unaffected, and, although relief could have some slight effect upon state revenues otherwise, that tenuous and speculative connection does not raise the Commonwealth to the level of an indispensable party.

## 4. Jurisdiction

West Penn next contends that the PUC has exclusive jurisdiction to address the merits of the case. We disagree.

Initially, we note that nowhere in PURTA did the legislature commit to the PUC the responsibility to decide any questions arising under that statute. Because the PUC is a creature of statute, it has only those powers which the legislature confers upon it and those powers which arise from the express powers by necessary implication. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977).

Furthermore, nothing in the Public Utility Code, 66 Pa. C. S. §§101-3315, purports to commit PURTA questions to the PUC. "Although the Public Utility Law grants to the [Public Utility] Commission general supervisory and regulatory powers over public utilities, 66 Pa. C. S. §501, the Code does not confer an exclusive jurisdiction to decide all matters involving regulated public utilities." *Virgilli*, 58 Pa. Commonwealth Ct. at 343, 427 A.2d at 1253.

Both this court and our Supreme Court have addressed, in an earlier case, the statutory construction issue upon which the present case turns. In *Commonwealth v. Philadelphia Electric Co.*, 21 Pa. Commonwealth Ct. 593, 347 A.2d 494 (1975), rev'd, 472 Pa. 530, 372 A.2d 494 (1977), this court decided the question of whether certain of Philadelphia Electric Company's dams, dikes and canals were "utility realty" under PURTA. Reviewing that decision, the Pennsylvania

Supreme Court also directly addressed the statutory construction question; neither opinion reflected reluctance to address the "utility realty" issue, and neither suggested that the court lacked jurisdiction to hear the case.

Those decisions demonstrate the continued vitality of the pre-PURTA approach to questions concerning the eligibility of utility property for the former constitutional exemption from local taxation. As the Supreme Court stated then, "[t]he determination whether a proposed use is a public one is a question for ultimate judicial determination." *Independence Township School District Appeal,* 412 Pa. 302, 309, 194 A.2d 437, 440 (1963).

The legislature, in §1101-A(2), 72 P.S. 8101-A(2) defined "public utility" for purposes of PURTA. That definition is not coextensive with the definition of "public utility" in 66 Pa. C. S. §102 of the Public Utility Code, which delineates the jurisdiction of the PUC, *e.g.,* PURTA includes electric cooperative corporations, while the Code specifically excludes them. Because PURTA extends to utilities outside the jurisdiction of the PUC, the legislature could not have intended that body to be the arbiter of all questions arising under PURTA. Although the legislature could conceivably have intended that the PUC hear cases involving some utilities and that the court hear the remainder, absent some clear indication, we will not infer such an unlikely and unwieldy scheme.

West Penn contends that taxation is a form of regulation, and, because only the PUC may regulate public utilities, local taxing authorities may not properly tax utility property.

Although the PUC does have regulatory power, that power extends only to utilities covered by the Public Utility Code and to subjects covered by that law. *Philadelphia Electric Co. v. Human Relations*

*Commission*, 5 Pa. Commonwealth Ct. 329, 290 A.2d 699 (1972). Because PURTA is part of the Tax Reform Code, not the Public Utilities Code, and because not all PURTA utilities are subject to the Public Utilities Code, we find West Penn's argument unpersuasive.

West Penn also attempts to characterize the present case as one clearly within the PUC's jurisdiction; that group includes cases involving ratemaking, provision of utility service and location of utility facilities.[10]

We agree that those areas are solely within the jurisdiction of the PUC; however, this case does not involve any of those issues. The determination of the propriety of including property for PURTA taxes is independent from the PUC's determination of the propriety of including property in the utility's rate base. Indeed, the definition of "utility realty" in PURTA, 72 P.S. §8101-A(3), differs from the "used or usable" standard employed by the PUC in ratemaking decisions. *See Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 614, 408 A.2d 917 (1979).

---

[10] *Duquesne Light Co. v. Monroeville Borough*, 449 Pa. 573, 298 A.2d 252 (1972) (location of facilities); *Chester County v. Philadelphia Electric Co.*, 420 Pa. 422, 218 A.2d 331 (1966) (location of facilities); *Landsdale Borough v. Philadelphia Electric Co.*, 403 Pa. 647, 170 A.2d 565 (1961) (location of facilities); *Duquesne Light Co. v. Upper St. Clair Township*, 377 Pa. 323, 105 A.2d 287 (1954) (location of facilities); *Klein-Logan Co. v. Duquesne Light Co.*, 261 Pa. 526, 104 A. 763 (1918) (provision of service); *Lower Chichester Township v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 503, 119 A.2d 674 (1956) (location of facilities); *Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 614, 408 A.2d 917 (1979) (ratemaking); *Philadelphia Electric Co. v. Human Relations Commission*, 5 Pa. Commonwealth Ct. 329, 290 A.2d 699 (1972) (discrimination in the provision of service).

108

Finally, West Penn contends that sound public policy dictates that the PUC have jurisdiction here in order to establish and maintain one uniform standard for the determination of utility property under PURTA.

The resolution of this case is merely a matter of statutory construction. Nothing suggests that the PUC has any particular expertise in construing taxation statutes, and uniformity may be attained, as is always true, through the vehicle of the appellate process.

Accordingly, we affirm the trial court's denial of West Penn's motion to dismiss and remand the case to that court for further proceedings on the merits.

### ORDER

Now, October 26, 1983, the order of the Court of Common Pleas of Allegheny County, dated July 16, 1981, is affirmed, and the case is remanded to that court for further proceedings.

Jurisdiction relinquished.