618 A.2d 1251

**YELLOW CAB COMPANY OF PITTSBURGH, Mon Valley Transportation Services, Inc., t/d/b/a Mon Valley Taxi and Connellsville Taxi Services, Inc., Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 22, 1992.

Decided Dec. 23, 1992.

Richard S. Dorfzaun, for petitioners.
John E. Herzog, Asst. Counsel, for respondent.

William E. Hawke for intervenor, D & T Limousine Service, Inc.

Before McGINLEY and KELLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

The Yellow Cab Company of Pittsburgh, Mon Valley Transportation Services, Inc., t/d/b/a Mon Valley Taxi, and Connellsville Taxi Service, Inc. (Petitioners) appeal from an order of the Pennsylvania Public Utility Commission (PUC) that granted the transfer application of D & T Limousine Service, Inc. (D & T). We affirm.

On March 5, 1991, D & T filed an application with the PUC seeking approval of the transfer of the rights of Joel Santolla and Dominick Motto, co-partners, t/d/b/a M & S Transportation Services (M & S). The application stated that D & T was to acquire all of the rights now held by M & S, for the reason that M & S decided to cease doing business and liquidate all of its assets, permits and licenses.

Petitioners filed timely protests to D & T's application. Following a prehearing conference and a hearing, D & T, M & S, and Petitioners entered into a stipulation whereby Petitioners agreed to withdraw their protests and M & S agreed to transfer only a portion of its operating rights to D & T, abandoning the remainder.[1] The PUC rejected the proposed stipulation, indicating that it was a restrictive amendment that was not in the public interest. The PUC directed that all operating rights of M & S be transferred to D & T.

1. The stipulation stated that the transfer was for the following rights: "To transfer, as a common carrier, in paratransit service, railroad train crews and other railroad employees of the Chessie System Railroad:
(a) Between points in the Counties of Bedford, Washington, Beaver, Lawrence and Greene;
(b) From points in the County of Lawrence to points in the Counties of Butler and Somerset, and vice versa;
(c) From points in Allegheny County to points in the Counties of Bedford, Fayette, Washington, Beaver, Lawrence and Greene and vice versa...."

■ We may not disturb an order of the PUC involving the transfer of a certificate unless an error of law has been committed, a necessary finding of fact is not supported by the record or constitutional rights have been violated. *P.D.J. Cab Co. v. Pennsylvania Public Utility Commission,* 93 Pa.Commonwealth Ct. 351, 356, 501 A.2d 342, 344–45 (1985). Petitioners contend that the PUC abused its discretion as there was no basis to reject .the stipulation, and the rejection went against the PUC's own stated policy of encouraging settlements. Petitioners also contend that those filing protests to transfers of certificates of public convenience will be less likely to withdraw their protests on the basis of a stipulation if the PUC overturns such stipulations without then granting the protestants .a hearing.

The PUC contends that its decision to reject the stipulation is justified, as the stipulation is a restrictive amendment that is not in the best interests of the public. The PUC notes that once a public need for services is established under a common carrier certificate, this need is presumed to continue unabated at the time of a transfer application. *Byerly v. Pennsylvania Public Utility Commission,* 440 Pa. 521, 270 A.2d 186 (1970). Consequently, the PUC determined that a reduction in services, as provided for by the stipulation, was not in the best interest of the public.

Section 1103 of the Public Utility Code, 66 Pa.C.S. § 1103, provides that the transfer of a certificate of public convenience by any means or device, shall be subject to the prior approval of the PUC, which may attach such conditions as it finds to be necessary or proper, in its sole or peculiar discretion. The PUC notes that its regulations provide that it is not bound to accept such restrictive amendments, even if agreed to by the parties in motor carrier applications. 52 Pa.Code § 5.235(b). In *Glenside Suburban Radio Cab, Inc. v. Pennsylvania Public Utility Commission,* 49 Pa.Commonwealth Ct. 523, 411 A.2d 874 (1980), we affirmed the power of the PUC to reject stipulations when such stipulations were not in the public interest.

■ We reject Petitioners' argument that the "public," for purposes of this application, consisted solely of the Chessie System Railroad, as all routes covered in the transfer were used solely for the purpose of transporting railroad employees. First, the rights to be transferred in the application are those of a common carrier, as noted in the stipulation, which is by definition open to the public and distinguished from a contract carrier. *See Garner v. Pennsylvania Public Utility Commission,* 177 Pa.Super.Ct. 439, 110 A.2d 907 (1955) (chief test of whether company is a common carrier or a contract carrier is whether it holds itself out as a common carrier). Second, the fact that all the passengers on the affected routes were employees of the Chessie Railroad System makes them no less members of the public and in need of protection.[2] Also, even if we were to accept Petitioners' contention that the only member of the "public" affected is the Chessie Railroad System, the only indication that the Chessie Railroad System agreed to the stipulation is D & T's attorney's statement to this effect at the time of the hearing, which is not evidence.

We also are constrained to conclude that the possibility that the PUC's practice of rejecting stipulations it deems restrictive will not discourage settlements and does not constitute a basis for reversing the PUC's order. We have already determined in *Glenside* that a party who withdraws its protest in reliance on a stipulation or restrictive agreement does so at its own risk and will not be heard to complain that it was denied the opportunity to actively oppose an application. *Glenside,* 49 Pa.Commonwealth Ct. at 529, 411 A.2d at 877.

The order of the PUC is affirmed.

## ORDER

AND NOW, this 23rd day of December, 1992, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

2. D & T, appearing as an intervenor supporting the decision of the PUC, also argues that the customers of the Chessie Railroad System are also members of the public affected by the proposed stipulation, as the costs of transporting company employees will be passed along to them in the railroad's rates.