**LOMA, INC., Corporate Livery, Inc., Elite Industries, Inc. and J & J Leasing & Rentals, Inc., Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1996.
Decided Sept. 5, 1996.

Mark Pfeiffer, for petitioners.

Kathryn G. Sophy, for respondent.

Michael S. Henry, for intervenor, Lehigh Valley Taxicab Co., Inc.

Before SMITH and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Loma, Inc., Corporate Livery, Inc., Elite Industries, Inc. and J & J Leasing & Rentals, Inc. (collectively, Objectors) appeal from an order of the Pennsylvania Public Utility Commission (PUC) approving a transfer of a certificate of public convenience.

The issues raised on appeal are: (1) whether a certificate of public convenience is "property" subject to a federal tax lien statute; (2) whether the Objectors have standing to claim a wrongful levy of the certificate by the Internal Revenue Service (IRS); (3) whether the PUC has jurisdiction to decide

the validity of the federal tax collection proceedings; and (4) whether the PUC committed an error of law or abused its discretion in approving the transfer application.

## I.

The following relevant facts found by the Administrative Law Judge (ALJ) and adopted by the PUC are undisputed. Diplomat Limousine Service, Inc. (Diplomat) held two certificates of public convenience issued by the PUC. On July 8, 1992, the IRS levied upon and seized Diplomat's certificates for unpaid tax, pursuant to Section 6331 of the Internal Revenue Code, 26 U.S.C. § 6331. Subsequently, the IRS sold both certificates at a tax sale. Ronald Winkelvoss purchased one of the certificates, docketed at PUC A–00104714, F1, for $4113.13.[1] Although the IRS, in its Notice of Seizure Form 2433, misidentified the certificate purchased by Winkelvoss as PUC A–00104712 F.2., the Certificate of Sale issued to Winkelvoss on March 17, 1993 contained the correct docket number.

The certificate purchased by Winkelvoss granted authority to transport persons, in limousine service, between points in Counties of Berks, Northampton and Lehigh, and from points in said Counties to points in Pennsylvania and return, except transportation for weddings in Northampton and Lehigh Counties. In July 1993, Winkelvoss assigned his interests in the certificate to Lehigh Valley Taxicab Company (Lehigh) for $9000. Before the assignment, Winkelvoss did not seek a transfer of the certificate nor did he operate under the certificate.

When it purchased the certificate in question from Winkelvoss, Lehigh held a certificate of public convenience which authorized it to provide airport transfer and call or demand services in the Lehigh and Northampton County area. On August 17, 1993, Lehigh filed an application seeking the PUC's

approval of a transfer of Diplomat's authority to Lehigh.

The ALJ concluded that although the certificate of public convenience is a mere privilege, not property, in Pennsylvania, the PUC had given tacit approval of a federal tax lien upon a certificate and its subsequent sale by the IRS, and that the PUC is not an appropriate forum for challenging the validity of the IRS' proceedings based upon its misidentification of the certificate in the Notice of Seizure. The ALJ recommended that the application be denied because Lehigh lacks propensity to operate legally.

■ Lehigh filed exceptions to the ALJ's initial decision, challenging the ALJ's finding that it lacked propensity to operate legally. The PUC first noted that it has regularly acknowledged the IRS' authority to seize and sell a certificate of public convenience and approved a subsequent transfer to a tax sale purchaser. *See Re Louis J. Sellman,* 67 Pa. P.U.C. 190 (1988); *Re Glenn H. Diehl,* 67 Pa. P.U.C. 182 (1988). The PUC concluded that the Objectors do not have standing to allege a wrongful levy of the certificate, and that the Objectors failed to rebut the presumption that Lehigh possessed the propensity to operate legally. The PUC accordingly granted Lehigh's exceptions and approved its transfer application. The Objectors' appeal to this Court followed.[2]

## II.

■ The Objectors first contend that the certificate of public convenience is not subject to the federal tax lien statute because in Pennsylvania such certificate is a mere privilege, not property, and that Winkelvoss and Lehigh therefore did not acquire any interests in the certificate in question.

■ Section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321, provides:

---

**1.** The other certificate was sold to Penn Express, and the PUC subsequently approved the transfer of that part of Diplomat's authority.

**2.** This Court's scope of review of the PUC's decision to approve or disapprove a transfer of a certificate of public convenience is limited to a determination of whether constitutional rights

have been violated, whether an error of law has been committed, or whether necessary findings are supported by substantial evidence in the record. *Yellow Cab Co. of Pittsburgh v. Pennsylvania Public Utility Commission,* 152 Pa.Cmwlth. 372, 618 A.2d 1251 (1992).

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property, whether real or personal,* belonging to such person. (Emphasis added.)

The lien under 26 U.S.C. § 6321 arises automatically when the outstanding taxes are assessed and extends to all property and rights to property belonging to the taxpayer. *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354 (3rd Cir.1986). Further, the IRS is authorized to levy upon and seize "all property and rights to property" on which there is a tax lien. Section 6331 of the Internal Revenue Code, 26 U.S.C. § 6331.

■ A determination of whether a lien attaches under 26 U.S.C. § 6321 requires inquiry into both state and federal law because the Internal Revenue Code itself does not create property rights, "but merely attaches consequences, federally defined, to rights created under the state law." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). The existence and nature of the interests, against which the federal lien is asserted, is ascertained by examining the state law. *21 West.* However, the ultimate question of whether an interest thus created and defined by the state law is property or a right to property under Section 6321 is governed by the federal law interpreting that section. *Rodriguez v. Escambron Development Corp.,* 740 F.2d 92 (1st Cir.1984).

■ This Court has consistently held that a certificate of public convenience issued by the PUC is a mere privilege, not a contract or a property interest, and that as such, the holder of the certificate can neither seek monetary damages for a breach of contract or in tort, nor assert constitutional rights to due process against the PUC for its unilateral action. *See Fiore v. Commonwealth,* 668 A.2d 1210 (Pa.Cmwlth.1995); *Cresco, Inc. v. Pennsylvania Public Utility Commission,*

154 Pa.Cmwlth. 27, 622 A.2d 997 (1993), *appeal denied,* 536 Pa. 633, 637 A.2d 292 (1993); *Pennsylvania Public Utility Commission v. Zanella Transit, Inc.,* 53 Pa.Cmwlth. 359, 417 A.2d 860 (1980); *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission,* 10 Pa.Cmwlth. 533, 311 A.2d 370 (1973). Section 2403(b) of the Public Utility Code, *as amended,* 66 Pa.C.S. § 2403(b), specifically provides that no property interest exists in a certificate of public convenience for operating a taxicab in first class cities, and that such certificate may not be pledged as security on debt. However, such characterization of the certificate under the state law is not determinative of the issue of whether the certificate constitutes property or rights to property under the federal tax lien statute. *Rodriguez.*

In *21 West,* the United States Court of Appeals for the Third Circuit considered the issue of whether the liquor license issued by the Pennsylvania Liquor Control Board is "property" or "rights to property" subject to a tax lien under 26 U.S.C. § 6321. The Court acknowledged that under Pennsylvania law, a liquor license is a mere privilege, not property subject to execution by a judgment holder or a security interest. *See* Section 4–468(b.1) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–468(b.1);[3] *1412 Spruce, Inc. v. Pennsylvania Liquor Control Board,* 504 Pa. 394, 474 A.2d 280 (1984); *Appeal of A.R.F. Bar, Inc.,* 72 Pa.Cmwlth. 367, 456 A.2d 709 (1983).

The Court noted, however, that the federal tax lien statute was intended to subject "any part of a bundle of rights of commercial value" to a tax lien. *21 West,* 790 F.2d at 357 (quoting *Randall v. H. Nakashima & Co.,* 542 F.2d 270, 278 (5th Cir.1976)). The Court then focused on whether a liquor license in Pennsylvania gives any added value to its holder and is bargainable and transferable to others in determining the proper federal classification of the liquor license. The Court stated:

Insofar as these decisions determine the nature of Pennsylvania liquor licenses as

---

**3.** Section 4–468(b.1) provides: "The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property."

legal interests, they are binding on this court. However, they do not determine the characterization of these interests under federal tax law.... It remains the task of this Court to evaluate whether a Pennsylvania liquor license, as created and limited by state law, constitutes property or rights to property under federal tax law.

Looking beyond the 'privilege' label which the decisions apply, *1412 Spruce* and [*A.R.F. Bar*] somewhat weaken the case for classifying a liquor license as property, since their effect is to restrict a license's leviability. Nonetheless, a liquor license continues to have pecuniary value for its holder in the form of potentially increased business revenues. Moreover, it may still be transferred and sold. For example the IRS finds willing buyers when it seeks to sell liquor licenses it has acquired.... And private parties regularly transfer liquor licenses, 'usually for consideration, and often in connection with the sale of [a] liquor business.' *1412 Spruce*, 504 Pa. at 400, 474 A.2d at 283. Consequently, we conclude that a Pennsylvania liquor license constitutes property or rights to property within the meaning of § 6321, and is therefore subject to a federal tax lien. (Citations omitted.)

*21 West*, 790 F.2d at 358.

Thus, in determining the applicability of the federal tax lien statute to a certificate of public convenience, we must look beyond the characterization of the certificate under the state law. Section 1102(a)(3) of the Public Utility Code, 66 Pa.C.S. § 1102(a)(3), permits any public utility, upon approval of the PUC, "to acquire from, or to *transfer* to any person or corporation, ... *by any method or device whatsoever*, including the sale of transfer of stock and including a consolidation, merger, sale or lease, the title to, or the possession or use of, any tangible or intangible property

used or useful in the public service." (Emphasis added.)[4] Further, upon the death or incapacitation of a holder of the certificate, the rights conferred by the certificate continue with his or her representative for one year, after which the PUC may grant a transfer to others. 52 Pa.Code § 29.31. The Objectors argue that because the PUC's approval is required for a transfer of the certificate in most instances, the certificate cannot be considered transferable. However, any restrictions imposed by the state statute on a transfer of interests do not affect the applicability of Section 6321 to such interests. *21 West.*

Moreover, it is unquestionable that the certificate gives its holder pecuniary value. The authority to operate under the certificate generates business income to its holder. The certificate is subject to a bargain between its holder and a willing buyer, as shown in this case. Winkelvoss sold the certificate to Lehigh for $9000 within a few months after he purchased it at the tax sale for $4113.13.

Hence, we hold that the certificate of public convenience has the attributes of the pecuniary value and the transferability and therefore constitutes property or a right to property subject to the federal tax lien statute.

### III.

■ The Objectors next contends that the IRS' seizure of Diplomat's certificate is invalid because the IRS in its Notice of Seizure failed to correctly identify the PUC's docket number for the certificate, and that they have standing to raise the issue of the validity of the IRS' proceedings before the PUC.[5]

■ Under Section 7426(a)(1) of the Internal Revenue Code, 26 U.S.C. § 7426(a)(1), any third party with interests in the property sold by the IRS may bring a civil action against the United States in a federal district

---

4. The Superior Court held that the phrase "by any method or device" contained in the predecessor of Section 1102(a)(3), includes any legal form or method of acquisition including compelled or forced sale. *Pottstown Borough v. Pennsylvania Public Utility Commission*, 144 Pa. Superior Ct. 220, 19 A.2d 610 (1941).

5. Section 6339(a)(1) of the Internal Revenue Code, 26 U.S.C. § 6339(a)(1), provides that "[i]n all cases of sale ... the certificate of such sale ... [s]hall be prima facie evidence of the right of the officer to make such sale, and conclusive evidence of the regularity of his proceedings in making the sale...."

court alleging a wrongful levy. *United States v. Campbell*, 761 F.2d 1181 (6th Cir. 1985); *Myers v. United States*, 647 F.2d 591 (5th Cir.1981). The civil action against the United States under 26 U.S.C. § 7426 is not the exclusive remedy for a wrongful seizure of a property by the IRS, and any party who has interests in the property may challenge the IRS' actions in an action brought in the state court. *See World Marketing, Ltd. v. Hallam*, 608 F.2d 392 (9th Cir.1979) (an owner of the property seized by the IRS may maintain a state action to quiet title against the tax sale purchaser); *Crow v. Wyoming Timber Products Co.*, 424 F.2d 93 (10th Cir. 1970) (the person claiming the ownership of the property levied upon and sold by the IRS may bring a replevin action against the purchaser in the state court).

To claim a wrongful levy by the IRS in a state proceeding, however, one must still have an interest or lien upon the property. 26 U.S.C. § 7426; *Campbell*. *See also Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) (to have standing in an action, a party must have a substantial, immediate, and direct interest in the subject matter of the litigation). In this matter, it is undisputed that the Objectors did not have any interest in Diplomat's certificate sold at the tax sale. Therefore, they lack standing to raise a wrongful levy by the IRS in a state proceeding.

■ Moreover, even if the Objectors have standing to raise such issue in a state proceeding, the PUC lacks jurisdiction to consider the validity of the federal tax collection proceedings. The PUC is a creature of the statute and thus has only those powers conferred by the legislature. *City of Philadelphia v. Philadelphia Electric Co.*, 504 Pa. 312, 473 A.2d 997 (1984). Consequently, the PUC's authority must arise expressly from the language of the statutes or by strong and necessary implication therefrom. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977).

Section 1103 of the Public Utility Code, 66 Pa.C.S. § 1103, authorizes the PUC to grant a certificate of public convenience if it finds that "the granting of ... a certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." However, the Public Utility Code does not expressly grant the PUC authority to consider the validity of the IRS' actions in deciding a transfer application. Moreover, such authority cannot be inferred from the PUC's general regulatory and supervisory power over public utilities under 66 Pa.C.S. § 501. Because the PUC is not expressly or by implication granted power to consider the wrongful levy claim, the PUC did not have jurisdiction over such matters. *See also Fairview Water Co. v. Pennsylvania Public Utility Commission*, 509 Pa. 384, 502 A.2d 162 (1985) (the PUC does not have jurisdiction to determine the scope and validity of the condemnation of the right-of-way of the public utility); *Filoon v. Pennsylvania Public Utility Commission*, 167 Pa.Cmwlth. 693, 648 A.2d 1339 (1994) (the PUC has no jurisdiction to award damages against the public utility); *Springdale Township v. Allegheny County Board of Property Assessment, Appeals & Review*, 78 Pa.Cmwlth. 100, 467 A.2d 74 (1983) (the PUC lacks jurisdiction to consider whether a public utility is eligible for tax exemption under the taxation statutes).

## IV.

■ Under Section 6339(a)(2) of the Internal Revenue Code, 26 U.S.C. § 6339(a)(2), a certificate of sale issued by the IRS "shall transfer to the purchaser all right, title, and interest of the party delinquent in and to the property sold...." Thus, Diplomat's authority under the certificate was transferred to Winkelvoss when the IRS issued the certificate of sale, and Lehigh acquired the interests in the certificate when they were assigned from Winkelvoss.

Relying on the PUC's previous decision in *Diehl*, the Objectors argue that even if the IRS properly levied upon and sold Diplomat's certificate, Lehigh's application must still be denied because Winkelvoss never filed an application for a transfer of the certificate.

In *Diehl*, the PUC cancelled the certificate because the tax sale purchaser failed to file a transfer application more than two years after the PUC issued an order reinstating the

certificate to allow a tax sale by the IRS and a subsequent transfer. The PUC concluded that such failure to file a transfer application within a reasonable time warranted the cancellation of the certificate.

Winkelvoss testified that when he purchased the certificate at the tax sale in March 1993, he intended to operate under that authority, but later decided to assign the authority to Lehigh. It is undisputed that Winkelvoss did not operate under the certificate. The fact that Winkelvoss did not seek the PUC's approval for a transfer of the certificate does not affect the chain of title from Diplomat to Lehigh. The title to the certificate was properly transferred to Winkelvoss pursuant to Section 6339(a)(2) of the Internal Revenue Code, and it is undisputed that the assignment of the interests in the certificate from Winkelvoss to Lehigh actually occurred. Further, the PUC did not find, as in *Diehl*, that the five-month delay between the tax sale and the transfer application was unreasonable. Hence, we reject the Objectors' argument.

### V.

▐ Finally, relying on Lehigh's unauthorized interstate operation, improper report of its revenues in a lump sum without allocating them to its various operations, and failure to reveal the extent of its affiliation with other companies, the Objectors challenge the PUC's finding that Lehigh possessed the propensity to operate legally. The Objectors also argue that the PUC erred in rejecting the findings made by the ALJ who actually heard the testimony.

▐ Under 52 Pa.Code § 41.14, an applicant seeking a motor carrier authority must establish, *inter alia*, propensity to operate safely and legally.[6] It is well established that the applicant's prior unlawful operations do not preclude the PUC from granting authority in a subsequent proceeding. *Brinks, Inc. v. Pennsylvania Public Utility Commission*, 500 Pa. 387, 456 A.2d 1342 (1983); *Gettysburg Tours, Inc. v. Pennsylvania Public Utility Commission*, 42 Pa.Cmwlth. 399, 400 A.2d 945 (1979). The PUC may still grant additional authority if it finds that such unlawful operations resulted from good-faith misunderstanding of the law. *W.C. McQuaide, Inc. v. Pennsylvania Public Utility Commission*, 137 Pa.Cmwlth. 282, 585 A.2d 1151 (1991).

In its decision, the PUC admonished Lehigh for its unauthorized operations and the irregularities in the past annual reports. However, the PUC accepted the evidence presented by Lehigh as credible and found that Lehigh misunderstood the extent of its authority, that Lehigh provided the unauthorized service only on rare emergency situations upon request by the airline personnel, that the irregularities in the past annual reports were not pervasive, and that due to the computerization of its operation, Lehigh is likely to comply with the reporting requirements in the future.

▐ In a public utility case, the PUC is the ultimate factfinder and determines the weight and credibility of the evidence. *Metropolitan Edison Co. v. Pennsylvania Public Utility Commission*, 62 Pa.Cmwlth. 460, 437 A.2d 76 (1981). Thus, the PUC has full authority to reject or disregard any findings made by the ALJ. *AT & T Communications of Pennsylvania v. Pennsylvania Public Utility Commission*, 130 Pa.Cmwlth. 595, 568 A.2d 1362 (1990). Further, this Court must defer to the PUC's determinations on matters within the PUC's administrative expertise, unless the PUC's findings are not supported by substantial evidence. *W.C. McQuaide.* In this matter, the PUC's find-

---

**6.** The applicant must also establish public demand or need for the proposed service and its technical and financial ability to provide the proposed service. However, where an applicant seeks a transfer of a certificate, it is presumed that there is a continuing public demand and need for the service. *Byerly v. Pennsylvania Public Utility Commission*, 440 Pa. 521, 270 A.2d 186 (1970). Further, where, as here, the applicant has previously been granted authority to operate and seeks approval of additional authority, there is continuing presumption that the applicant is technically and financially fit for the service. *South Hills Movers, Inc. v. Pennsylvania Public Utility Commission*, 144 Pa.Cmwlth. 505, 601 A.2d 1308 (1992). On appeal, the Objectors do not challenge the ALJ's findings adopted by the PUC that the Objectors failed to rebut such presumptions.

ing that Lehigh possesses the propensity to operate legally is based upon its credibility determinations. Therefore, that finding is supported by substantial evidence and may not be disturbed on appeal.

Accordingly, the order of the PUC is affirmed.

### ORDER

AND NOW, this 5th day of September, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.