622 A.2d 997

**CRESCO, INC. and Saturn Cab Company, Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1992.

Decided Jan. 29, 1993.

Publication Ordered March 23, 1993.

Michael S. Henry, for petitioners.

John E. Herzog, Asst. Counsel, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

This is a petition for review filed by Cresco Inc. (Cresco) and Saturn Cab Company (collectively, petitioners) from an order of the Pennsylvania Public Utility Commission (PUC), entered on December 18, 1991, which revoked Cresco's certificate of public convenience.

In 1990, the Pennsylvania Public Utility Code was amended to provide for a medallion system of regulation for taxicabs in first class cities.[1] Pursuant thereto, the PUC established procedures whereby taxicabs operating under PUC certificates of public convenience could obtain medallions.[2] A subsequent order, entered March 6, 1991, established April 19, 1991 as the last date for grandfathering existing certificate holders into the medallion system and re-stated the requirements for receipt of a medallion as set forth in the October order.[3] The March order also provided that failure to obtain a medallion by April 19, 1991 would be deemed a waiver of the opportunity

1. The Public Utility Code, 66 Pa.C.S. §§ 2401–2416.
2. By order entered October 2, 1990, the PUC provided that:
    All certificate holders who make application *and* pay the required fee on or before October 22, 1990 will be offered an opportunity to present their vehicles for inspection and obtain a medallion on or before December 31, 1990.
    Any current certificate holder who fails to obtain a medallion from the Commission on or before December 31, 1990 shall cease operations under its certificate of public convenience.
    (R.R. at 48a.)

3. The medallion system required: payment of an initial fee for each medallion and, in some circumstances, filing of an application; evidence of insurance, registration and current Pennsylvania state inspection; and inspection by the PUC. (R.R. at 1a–6a.)

to receive a medallion based upon a prior certificate and that certificate holders who did not meet the April 19, 1991 deadline would "be subject to proceedings for the revocation of [the] certificate of public convenience." (R.R. at 5a–6a.)

Cresco, a certificate holder, did not obtain a medallion by the April 19, 1991 deadline. Accordingly, on June 19, 1991, the PUC issued an order to show cause informing Cresco that it was in violation of the March 1991 order and apprising Cresco that it had twenty days in which to file an answer to the PUC's allegations. No timely answer was filed. In fact, Cresco took no further action until August 5, 1991, when it filed a Petition for Emergency Relief. In the petition, Cresco alleged that it had entered into an agreement of sale and transfer of its certificate with Teffera Kebede, the president and sole shareholder of Saturn Cab Company; that the medallion and transfer fee had been paid; that an inspection had been requested and scheduled for 9:00 a.m. on April 19, 1991 and that the reason for not presenting the taxicab for the scheduled inspection was that Kebede was arrested on April 15, 1991 while driving this vehicle in preparation for the inspection and that the vehicle was impounded, making it impossible for it to be prepared in time for the medallion inspection.[4] Cresco contended that Kebede's failure to present the vehicle for the requisite inspection was due to inability based upon his incarceration [5] and to the impoundment of the vehicle.

By order entered August 20, 1991, the PUC denied Cresco's Petition for Emergency Relief, noting that Cresco had the duty to obtain the medallion under the terms and conditions set forth in the relevant regulations and that it could not delegate this duty to a third party, including a prospective transferee such as Kebede. The PUC further noted that there was no transfer application on record and that, despite

4. At the time of the arrest the vehicle lacked a radio, dome light and meter and it had not been painted with the colors or markings of a taxicab. (R.R. at 11a.)

5. Kebede was eventually acquitted of all charges, which stemmed from his alleged violation of the Medallion Act.

allegations to the contrary in the Petition for Emergency Relief, no transfer fee had been submitted.

On August 27, 1991, Cresco and Saturn filed a Petition for Reconsideration of the PUC order denying emergency relief. In this petition, both Cresco and Saturn contended that the transfer application and fee had been filed with the PUC as of that date.[6] Petitioners conceded that Cresco was responsible for having the vehicle inspected and alleged that Cresco had appointed Kebede as its attorney-in-fact to arrange for and have the inspection.

On this same date, August 27, 1991, Cresco also filed an answer to the PUC's June 19, 1991 order to show cause. Cresco conceded all of the material averments of fact contained in the order but alleged that "its failure to obtain a medallion is excusable for the reasons set forth in its Petition for Relief and Petition for Reconsideration," (R.R. at 24a) requested that the order to show cause be dismissed and further requested that an evidentiary hearing be held on the merits.

The PUC, in an order entered December 18, 1991, made absolute the order to show cause, formally revoked Cresco's certificate of public convenience and noted that Cresco had "forfeited its ability to obtain a medallion based solely upon the possession of a Philadelphia taxicab certificate of public convenience." (R.R. at 44a–45a.) We affirm.

Petitioners argue that the PUC violated their procedural due process rights by denying their petitions without a hearing on the reasons why they failed to obtain a medallion prior to the deadline. The PUC contends that a hearing was not necessary because the PUC accepted all of the facts alleged as true so that the question presented to the PUC was one of law, that it found that petitioners had not established a case excusing noncompliance with the April 19, 1991 deadline and

6. The December 1991 order states that "no effort was made to file a transfer application until August 28, 1991 and that [the] application was not accepted for filing due to Cresco's failure to obtain a medallion." (R.R. at 44a.)

that it properly exercised its discretion in revoking Cresco's certificate of public convenience without holding a hearing.

This court's scope of review, when addressing orders of state agencies such as the PUC, is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether substantial evidence supports the PUC's findings, determination or order. *SME Bessemer Cement Inc. v. Pennsylvania Public Utility Commission*, 116 Pa.Commonwealth Ct. 13, 540 A.2d 1006 (1988).

■ The issue presented is whether the PUC's failure to hold a hearing prior to entering the order revoking Cresco's certificate of public convenience was an abuse of discretion, an error of law or a violation of Cresco's constitutional rights.

Two cases have been cited in support of the PUC's contention that it properly exercised its discretion not to hold an evidentiary hearing. In *SME Bessemer Cement* we held that the PUC's discretion under section 703(b) of the Public Utility Code, 66 Pa.C.S. § 703(b), as to whether to hold a hearing on a complaint also extends to a petition for emergency relief for a stay or supersedeas from termination of services. In that case, however, hearings had already been held, and SME Bessemer was arguing that the PUC order barring future hearings would preclude it from obtaining review in the event of a change in circumstances. In this case, no hearing was ever held, and we are not dealing with a hypothetical future event. Thus, *SME Bessemer Cement* stands for the proposition that in some circumstances, including a particular kind of petition for relief, the PUC may exercise discretion not to hold a hearing. Our analysis is further aided by reference to *White Oak Borough Authority v. Pennsylvania Public Utility Commission*, 175 Pa.Superior Ct. 114, 103 A.2d 502 (1954). *See also Lehigh Valley Power Committee v. Pennsylvania Public Utility Commission*, 128 Pa.Commonwealth Ct. 276, 563 A.2d 557 (1989). In *White Oak*, the PUC, without holding a hearing, entered an order dismissing an application for a certificate of public convenience involving acquisition of water facilities. As in the present case, the PUC had considered all of the facts alleged as true. Our superior court held that a hearing was

not required. "As there was no factual issue involved the question presented to the Commission was one of law. Consequently, there was no necessity to require the filing of an answer *or to hold a hearing.*" *Id.* at 123, 103 A.2d at 507 (emphasis added). Based upon these precedents, it was not an error of law or an abuse of discretion for the PUC to consider all of petitioners' averments as true and to enter an order without holding a hearing.

We must still determine whether the petitioners' constitutional rights were violated by the PUC's refusal to hold a hearing. The basis of the petitioners' due process claim is that although they had notice of the proposed PUC action to revoke the certificate, they did not have an opportunity to challenge that action in a hearing. In *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), our supreme court recently repeated the basic elements of procedural due process: adequate notice, opportunity to be heard, and the chance to defend oneself and noted that "due process is fully applicable to adjudicative hearings involving substantial property rights." *Id.* at 542, 605 A.2d at 1207, quoting *Soja v. Pa. State Police,* 500 Pa. 188, 193, 455 A.2d 613, 615 (1982). We have recognized that with regard to the opportunity to be heard the "fundamental requirement of due process is the *opportunity* to be heard at a *meaningful* time and in a *meaningful* manner." *Barasch v. Pennsylvania Public Utility Commission,* 104 Pa.Commonwealth Ct. 52, 81, 521 A.2d 482, 496 (1987) (emphases added). The procedure followed by the PUC offered petitioners several meaningful opportunities to be heard which they failed to preserve. Not only did they fail to file a timely transfer application, but they also failed to file a timely answer to the order to show cause. Furthermore, due process does not arise in a vacuum. For due process protections to apply, a person must have a substantial property interest in the subject matter of the action. Yet, Cresco does not claim a property interest in the certificate of public convenience.[7] Therefore, because petitioners failed to follow

7. It is doubtful whether, even if claimed, such an interest could be proved. Section 2403 of the Public Utility Code provides that "medal-

the PUC procedures and failed to respond to the order to show cause in a timely fashion and because they failed to assert a property interest in the certificate of public convenience, a hearing is not now required.[8]

Because the matter to be resolved was a purely legal question the PUC did not abuse its discretion, err as a matter of law or deprive the petitioners of due process of law by revoking the certificate without providing the opportunity to present evidence at a hearing. Accordingly, we affirm the PUC's order of December 18, 1991.

## ORDER

AND NOW, this 29th day of January, 1993, the order of the Pennsylvania Public Utility Commission, dated December 18, 1991, is affirmed.

lions are property and may not be revoked or cancelled by the commission," 66 Pa.C.S. § 2403(a), and that "no property right shall exist in the certificate itself." 66 Pa.C.S. § 2403(b). The property interest is in the medallion, not in the certificate of public convenience and since Cresco never received the medallion, it had no property interest to protect. In our companion case of *Edan Trans Corp. v. Pennsylvania Public Utility Commission*, 154 Pa.Commonwealth Ct. 21, 623 A.2d 6 (1993), we noted that "[i]t is a patent absurdity to declare that a person's property rights have been impaired when he is denied the ability to sell something which he does not own in the first place." *Id.* 623 A.2d at 8.

8. In addition, the provisions for the April 19, 1991 deadline provided a specific exclusion for transfer applications which were *pending* before the PUC as of that date. Had the transfer application been filed in timely fashion, Cresco would have been able to avail itself of that provision and thus escape liability for noncompliance with the inspection deadline.