**DEE–DEE CAB, INC., t/a Penn–Del Cab, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.

Decided Feb. 25, 2003.

Michael F. Henry, Philadelphia, for petitioner.

John E. Herzog, Harrisburg, for respondent.

Before SMITH–RIBNER, J., PELLEGRINI, J., and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Dee–Dee Cab, Inc., petitions for review of an order of the Pennsylvania Public Utility Commission (PUC) that denied Dee–Dee's petition for reconsideration of a previous order denying Dee–Dee's application to expand its taxicab service to encompass a larger area in the City of Philadelphia, more specifically the Philadelphia International Airport including airport terminals. Dee–Dee presents three questions for review: Dee–Dee questions first whether the Act commonly known as the "Medallion Act," 66 Pa.C.S. §§ 2401–2416, precludes expansion of authority in Philadelphia for a grandfathered, non-medallion taxicab service; second, whether the PUC's decision was arbitrary and capricious because it was not supported by substantial evidence; and third, whether the PUC's decision violated Dee–Dee's due process and equal protection rights.

## I

Dee–Dee is a taxicab company operating out of Media, Delaware County, with authority to provide service in parts of Delaware County and Philadelphia. On February 6, 2001, Dee–Dee filed an application with the PUC requesting authority to provide expanded service in Delaware County and a part of Philadelphia, encompassing the Philadelphia Airport.[1] Eight "medallion" taxicab companies with authority to provide citywide service in Philadelphia filed protests opposing Dee–Dee's request. However, none of the eight protestants attended or otherwise participated in the hearing held on June 14, 2001, prompting the administrative law judge to dismiss the protests and to certify the matter to the PUC for a decision based solely on Dee–Dee's application and twenty-two supporting affidavits of public need.

By order entered January 24, 2002, the PUC granted Dee–Dee's request for expanded authority in Delaware County but denied its request for expanded authority in Philadelphia. The PUC held that the Medallion Act prohibited the PUC from granting expanded authority in Philadelphia to a non-medallion company; that to grant Dee–Dee's request for expansion of its partial authority in Philadelphia would implicitly exceed the certificate of public convenience and corresponding medallion limit; that a grant of the request would permit Dee–Dee to introduce an unlimited number of non-medallion taxicabs into service at the Philadelphia Airport and create an uneven playing field for the medallion holders; and that to allow expansion by a non-medallion company would undermine the regulatory system embodied in the Medallion Act.

1. The application requested expanded authority to provide call or demand service in a portion of the City/County of Philadelphia bounded by 54th Street, Hog Island Road, Delaware County Line, Cobbs Creek and Elmwood Avenue.

Dee–Dee filed a petition for reconsideration, asserting first that because the Medallion Act applies only to taxicab companies providing citywide service, it does not prohibit the PUC from granting expanded authority to a company that will operate in only a limited part of Philadelphia.[2] Second, Dee–Dee asserted that no evidence had been presented by the protestants or the PUC supporting the PUC's conclusion that the expanded authority would be contrary to the public interest, and Dee–Dee had submitted supporting affidavits of public need. Thus the PUC's finding that Dee–Dee's application was contrary to the public interest was unsupported by substantial evidence and was in violation of its due process rights. In a supplemental petition, Dee–Dee indicated that in February 1999 the PUC had granted to Bucks County Services, a non-medallion taxicab company, expanded authority to operate in Philadelphia similar to that which Dee–Dee was now requesting. In a four-to-one decision entered April 26, 2002, the PUC denied Dee–Dee's petition for reconsideration, reiterating that the Medallion Act prohibited it from granting non-medallion companies expanded authority in Philadelphia, that the requested expansion was not in the public interest and that allowing non-medallion companies to expand into Philadelphia would undermine the Medallion Act's regulatory system.[3]

II

Before this Court, Dee–Dee first argues that the Medallion Act does not prohibit the PUC from granting expanded authority to non-medallion taxicab companies to operate in Philadelphia. Dee–Dee cites Section 2402 of the Act, 66 Pa.C.S. § 2402, pointing out that the medallion system was created "to provide holders of certificates of public convenience which authorize citywide call or demand service the opportunity to upgrade and improve the operations of taxicabs." Because its certificate of public convenience authorizes it to operate in only a limited part of Philadelphia, Dee–Dee argues that it is not subject to the requirements of the Medallion Act. Dee–Dee maintains that in *Pennsylvania Public Utility Commission v. Genco Services,*

**2.** Dee–Dee did not file a notice of appeal or a petition for review with this Court from the January 2002 PUC order. Instead, Dee–Dee proceeded on its timely-filed petition for reconsideration, and thus Pa. R.A.P. 1701(b)(3), governing reconsideration practice after an appeal is taken or review is sought of a trial court or agency order, does not apply to this situation. *See* 2 G. Ronald Darlington et al., Pennsylvania Appellate Practice 2d Ed. § 1701:2 (1994). The PUC issued a new decision and order on April 26, 2002 substantively disposing of the legal issues in the case and the arguments that Dee–Dee raised on reconsideration and then denying its request for expanded service. The PUC stated that under Section 703(g) of the Public Utility Code, 66 Pa.C.S. § 703(g), a party may raise any matter designed to convince the PUC that it should exercise its discretion to amend or rescind its prior order. *See AT&T Communications of Pennsylvania v. Pennsylvania Public Utility Commission,* 130 Pa.Cmwlth. 595, 568

A.2d 1362 (1990). Further, Section 703(g) provides that the PUC may at any time after notice and an opportunity to be heard rescind or amend any order that it made, and thereafter such subsequent order shall have the same effect as provided for in the original order.

**3.** The Court's review of a final order of the PUC is prescribed in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. It provides that the Court shall affirm unless it determines that the adjudication is in violation of constitutional rights, that it is not in accordance with law, that provisions relating to practices of Commonwealth agencies in Sections 501–508 of the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, have been violated or that any necessary finding of fact is not supported by substantial evidence. *See also Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 812 A.2d 478 (2002).

*Inc., t/a Cheldon Radio Cab Co., Inc.,* 76 Pa. P.U.C. 174 (1992); the PUC concluded that the Medallion Act applies only to holders of certificates of convenience which authorize citywide service in Philadelphia. Dee–Dee also cites *Application of Bucks County Services* (No. A–00111913, filed February 17, 1999), in which the PUC granted expanded operating authority in Philadelphia to a non-medallion taxicab company. According to Dee–Dee, the PUC's decision to deny Dee–Dee's request contradicts not only the Medallion Act's language but also the PUC's own policy.

The Medallion Act, enacted by the Act of April 4, 1990, P.L. 93, was intended to upgrade and improve taxicab service in Philadelphia:

### § 2402. Medallion system created

There is hereby created a medallion system in cities of the first class in order to provide holders of certificates of public convenience which authorize citywide call or demand service the opportunity to upgrade and improve the operations of taxicabs. Each current holder of a certificate of public convenience which authorizes citywide call or demand service in cities of the first class is entitled to apply to obtain a medallion from the commission at its offices, within 90 days of the effective date of this chapter, for an initial fee in an amount to be determined pursuant to the requirements of section 2414 (relating to budget and fees)..... The medallion shall be marked with the taxicab number assigned to the corresponding certificate of public convenience.

66 Pa.C.S. § 2402. Each medallion issued under this section must be affixed to a vehicle approved under a corresponding certificate of public convenience to operate as a taxicab in Philadelphia. 66 Pa.C.S. § 2403(b); 52 Pa.Code § 30.2. Each medallion authorizes the identified vehicle to operate as a taxicab for the fiscal year in which the medallion is issued, at the expiration of which it may be reissued yearly to the holder in accordance with the Medallion Act and the PUC's regulations. 66 Pa.C.S. §§ 2404(a), 2406; 52 Pa.Code §§ 30.2, 30.11. In addition, the holder of a certificate and medallion must submit to extensive regulations governing, among other things, annual vehicle inspections, complaint procedures and driver qualifications and certification.[4]

In regard to the issue presented in this appeal, the Medallion Act limits to 1600 the number of certificates and corresponding medallions that may be issued by the PUC for taxicabs in Philadelphia. *See* 66 Pa.C.S. § 2407. Within limits set by the legislature, the PUC may increase the number of taxicabs providing service in Philadelphia, but it may do so only by increasing the number of certificates and accompanying medallions for taxicabs providing citywide service. 66 Pa.C.S. §§ 1103(c)(2), 2407. Pursuant to Section 2404(d), 66 Pa.C.S. § 2404(d), the only exception to the general rule against non-medallion taxicabs operating in Philadelphia pertains to vehicles operated under a certificate of public convenience authorizing call or demand service elsewhere in the Commonwealth, which may transport persons and property (1) to cities of the first class in accordance with the service authorized under the certificate of public convenience and (2) from any point in a city of the first class to any point beyond the city

---

4. *See* 66 Pa.C.S. § 2404(a), 55 Pa.Code §§ 30.31–30.34 (vehicles); 66 Pa.C.S. § 2405, 55 Pa.Code §§ 30.51–30.55 (complaints); 66 Pa.C.S. § 2409, 55 Pa.Code §§ 30.71–30.77 (driver qualifications). Also, refer to *Medallion Program; Taxicab Patron's Bill of Rights,* 2000 WL 770580, 2000 Pa. PUC LEXIS 36 (April 27, 2000) (final order setting forth detailed "bill of rights" for passengers in medallion taxicabs).

if the request for service is received by call to its radio dispatch service.

When the language of a statute is free from ambiguity, any further deliberation as to its meaning is unwarranted. *See* Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b); *Meier v. Maleski,* 670 A.2d 755 (Pa.Cmwlth.1996), *aff'd,* 549 Pa. 171, 700 A.2d 1262 (1997). To the contrary, when the words of a statute are not explicit, a court attempting to ascertain legislative intent may consider such matters as the occasion and necessity for the statute, the object to be obtained, the consequences of a particular interpretation and administrative interpretations of the statute. 1 Pa.C.S. § 1921(c); *Meier.* In Pennsylvania the appellate courts have adopted a "strong deference" standard for reviewing agency interpretations of statutes, which they are charged to enforce. *Scanlon v. Department of Public Welfare,* 739 A.2d 635 (Pa.Cmwlth.1999). An agency's interpretation of a statute for which it has enforcement authority will not be reversed unless it is clearly erroneous. *Armstrong Communications, Inc., v. Pennsylvania Public Utility Commission,* 768 A.2d 1230 (Pa.Cmwlth.2001).

### III

■ In this appeal, the Court need not struggle to reconcile the Medallion Act's language with the interpretation adopted by the PUC, for the Act's language is sufficiently clear for the Court to conclude, first, that the Act was intended to be a comprehensive system of regulation for taxicabs operating in Philadelphia, and second, that the regulatory system so established in 1990 does not provide for the expansion of authority for taxicab companies operating outside the scope of the Medallion Act. Section 2404(a) flatly states that no vehicle may be operated as a taxicab in Philadelphia unless it is authorized to do so by a certificate of public convenience and accompanying medallion, and the statutory exception to this rule does not apply to Dee–Dee's application for expanded authority. Section 2407 does provide for the expansion of taxicab service in Philadelphia, but only by the issuance of a greater number of certificates and medallions authorizing the citywide service contemplated by the Medallion Act. Contrary to Dee–Dee's arguments, the fact that the extensive system of regulation embodied in the Medallion Act does not provide for expansion of authority for non-medallion companies indicates that the PUC may no longer authorize such expanded service.

■ The Court recognizes that the Medallion Act and the PUC's regulations do not represent the totality of laws applicable to taxicabs operating in Philadelphia. There remain operating in the city some number of taxicabs that are authorized to operate only in parts of the city and whose parent companies are not included in the medallion system. Obviously, the authorizations for these companies to continue operating in Philadelphia on a less-than-citywide basis were "grandfathered" into the new regulatory scheme, but that allowance, whatever its basis, does not support the proposition that the Medallion Act allows further expansion of less-than-citywide authority for non-medallion taxicab companies.[5] Nor do the PUC's earlier

---

5. In their briefs, both Dee–Dee and the PUC refer to the "grandfathered" authority of non-medallion taxicab companies to continue operating in Philadelphia after passage of the Medallion Act, but without explaining the statutory or other basis for the provision. In *Cresco, Inc. v. Pennsylvania Public Utility Commission,* 154 Pa.Cmwlth. 27, 622 A.2d 997 (1993), the Court notes that by order entered March 6, 1991, the PUC established

decisions in *Genco* and *Application of Bucks County Services* support Dee–Dee's position. An administrative agency is not subject to the principle of *stare decisis* to the same degree as is an appellate court, although if an agency renders inconsistent decisions it should distinguish or overrule its own precedents.[6] *Bell Atlantic–Pennsylvania, Inc., v. Pennsylvania Public Utility Commission*, 672 A.2d 352 (Pa. Cmwlth.1995).

■ Finally, the proceedings below did not violate any of Dee–Dee's rights to equal protection or procedural due process. Because the precedent on which Dee–Dee relies to support his very brief equal protection claim has either been distinguished or overruled by the PUC, no issue remains in this regard. For matters coming before an administrative agency, procedural due process, however, requires that a party be afforded reasonable notice of the issues raised and the agency's rulings on those issues, so that the party has an opportunity to present any response or objection. *Bell Atlantic–Pennsylvania, Inc., v. Pennsylvania Public Utility Commission*, 763 A.2d 440 (Pa.Cmwlth.2000);

*Honey Brook Water Co. v. Pennsylvania Public Utility Commission*, 167 Pa. Cmwlth. 140, 647 A.2d 653 (1994). When there are no disputed questions of fact and the issue to be decided is purely one of law or policy, a case may be disposed of without resort to an evidentiary hearing. *Cresco, Inc. v. Pennsylvania Public Utility Commission*, 154 Pa.Cmwlth. 27, 622 A.2d 997 (1993). The legal issue on which this case was decided was raised in the PUC's January 2002 order, and Dee–Dee was afforded an opportunity upon reconsideration to present any objections that it had to the PUC's legal determination, which Dee–Dee addressed in some detail. This procedure afforded Dee–Dee the due process required by law.

The Court holds that the PUC's administrative interpretation of the Medallion Act is reasonable and is consistent with its express language. As a result, the Court agrees that the Medallion Act does not grant the PUC the power to approve expanded authority for grandfathered, non-medallion taxicab companies operating under certificates of public convenience that authorize less-than-citywide service. Be-

---

procedures for grandfathering existing certificate holders into the newly created medallion system, but the opinion does not indicate whether the order also grandfathered certificate holders who were not authorized to provide citywide service and who would not be applying for medallions. Section 3 of the Act that adopted the Medallion Act, Act of April 4, 1990, P.L. 93, provides in part that its passage "does not affect any act done, liability incurred or right accrued or vested." Although the parties did not raise this provision, it arguably provides authority for grandfathering the rights of certain taxicab companies to provide less-than-citywide service in Philadelphia.

6. The *Genco* decision stands only for the propositions that grandfathered, non-medallion taxicabs operating in Philadelphia are subject to the PUC's non-Medallion-Act regu-

lations and that the Philadelphia police may enforce those regulations. The decision discusses the Medallion Act but the case was decided by reference to unrelated regulations, and nothing in the decision supports the claim that the Medallion Act permits expanded authority for grandfathered, non-medallion taxicabs operating in Philadelphia. In its brief the PUC concedes that *Application of Bucks County Services* was wrongly decided and that its decision in the present case overrules that decision. The PUC denies as well the applicability of another decision cited by Dee–Dee in *Application of Penn Cab Co.* (No. A–00110733, filed June 11, 1996). The PUC noted that in *Penn Cab* it expressly stated that new requests to operate only in Philadelphia would be governed by the Medallion Act. Thus none of these decisions are binding precedent.

cause the Court has concluded that the PUC did not err in its interpretation of the Medallion Act or violate any of Dee–Dee's constitutional rights, the Court need not address Dee–Dee's remaining argument that no substantial evidence existed to support the finding that Dee–Dee's application was contrary to the public interest. The Court, therefore, affirms the order of the PUC.

## ORDER

AND NOW, this 25th day of February, 2003, the order of the Pennsylvania Public Utility Commission is affirmed.