**FOUNTAIN CAPITAL FUND, INC. and Garland Harris, Petitioners**

v.

**PENNSYLVANIA SECURITIES COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 8, 2008.

Filed April 30, 2008.

Joseph D. Mancano, Wayne, for petitioners.

Daniel J. Gallagher, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

This appeal from a Commonwealth agency involves an untimely request for a hearing under a statute regulating sales and sellers of securities. In particular,

Fountain Capital Fund, Inc. (Fountain Capital) and Garland Harris (Harris) (collectively, Petitioners) petition for review from an order of the Pennsylvania Securities Commission (Commission) that denied their request for a hearing related to a summary cease and desist order issued by the Commission in February 2007 (Summary Order). Petitioners argue the Commission violated their due process rights by issuing a deceptively worded Summary Order that led them to believe they could not request a hearing under the Pennsylvania Securities Act of 1972 (Securities Act)[1] unless they admitted wrongdoing. They assert the Commission erred in refusing to vacate the Summary Order and in failing to conduct a hearing on the issue of whether they violated the Securities Act. Discerning no merit in these assertions, we affirm.

On February 27, 2007, the Commission served its Summary Order on Petitioners. In the Summary Order, the Commission stated that based on its preliminary investigation, evidence existed to support the following findings:

1. [Fountain Capital] ... was engaged in the business of effecting transactions in securities for the account of itself and others;

2. [Harris] was ... the president and largest shareholder in [Fountain Capital], and [Harris] was in control of the activities of [Fountain Capital];

3. In or about July 2006 and October 2006, [Fountain Capital] engaged in the offer and sale of at least two issues of common stock (Stock) to at least one Pennsylvania resident (PA Resident);

4. [Harris] directly or indirectly controlled the activities of [Fountain Capi-

1. Act of December 5, 1972, P.L. 1280, *as amended*, 70 P.S. §§ 1–101–1–612.

tal] in the offer and sale of the Stock to a PA Resident;

5. [Fountain Capital] is not registered as a broker-dealer pursuant to Section 301(a) of the [Securities Act], 70 P.S. § 1–301(a); and

6. [Harris] is not registered as a broker-dealer pursuant to Section 301(a) of the [Securities Act]. . . .

Reproduced Record (R.R.) at 1a–2a.

Based on these findings, the Commission ordered Petitioners to immediately cease and desist transacting business as broker-dealers in Pennsylvania in violation of Section 301(a). Of particular relevance here, the Summary Order informed Petitioners that if they wished to engage in the sale of stock to Pennsylvania residents without registration, they had 30 days to request a hearing to allow the Commission to consider rescinding the Summary Order. R.R. at 3a.

On April 13, 2007, *15 days after the expiration of the 30–day period in the Summary Order,* Petitioners sent a letter to the Secretary of the Commission requesting the Summary Order be vacated in favor of another order that properly defined the issue to be addressed, i.e., whether Petitioners acted as broker-dealers in certain business transactions. Alternatively, the letter requested a hearing to address the Commission's "erroneous accusation that [Petitioners] acted as broker-

dealers in certain business transactions." R.R. at 5a.

On May 15, 2007, the Commission issued a decision denying Petitioners' request to vacate the Summary Order or to hold a hearing. The Commission determined Petitioners' hearing request was untimely.

On June 14, 2007, Petitioners filed a petition for review directed to this Court's original and appellate jurisdictions. The Commission filed an answer to the original jurisdiction portion of Petitioners' petition for review.

In August 2007, the Commission filed a motion for summary relief pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), requesting this Court deny the petition for review in its entirety for lack of subject matter jurisdiction, or, in the alternative, requesting this Court deny the portion of the petition in which Petitioners sought mandamus relief in our original jurisdiction.[2]

In late-September 2007, Senior Judge Flaherty heard oral argument on the Commission's application for summary relief. Shortly thereafter, he issued an opinion that granted the Commission's motion in part. Specifically, Judge Flaherty determined Petitioners could not state a claim for mandamus. As such, he dismissed that portion of the petition for review directed

---

**2.** After filing their petition for review, Petitioners filed a notice of deposition to the Secretary of the Commission. Petitioners also filed a notice of deposition to a "designated representative" of the Commission, through which they sought to inquire into the drafting of the Summary Order, the general manner in which the Commission's summary cease and desist orders are drafted, and the allegations raised in the Commission's answer to Petitioners' original jurisdiction petition for review. The Commission responded by filing a motion for protective order seeking to quash the notices of deposition. This Court

heard oral argument on the motion on August 22, 2007.

During oral argument, the Court became aware of the Commission's pending application for summary relief in which the Commission asserted this Court lacked subject matter jurisdiction. The Court determined it would be premature to permit discovery. Therefore, the Court held in abeyance a ruling on the motion for protective order until a determination was made on the Commission's motion for summary relief. The Court also ordered the stay of all discovery until a determination was made on the motion for summary relief.

to this Court's original jurisdiction. However, Judge Flaherty denied the Commission's motion to dismiss the appellate jurisdiction portion of the petition for review, stating (with emphasis added):

The Summary Order does indicate that Petitioners were found to engage, or were about to engage, in acts that violated Section 301(a) of the [Securities] Act and that they could appeal only if they "desir[ed] to engage in the said acts or practices." Petitioners assert that this language was confusing and led them to believe that they should only file an appeal if they wanted to engage in illegal conduct. *While we express no opinion at this time whether this argument may ultimately prevail,* the language in the Summary Order could be construed to require Petitioners to admit to wrongdoing in order to appeal it. Petitioners may, therefore, have been impacted as they allege and they may be successful in their Petition for Review.

In so holding, we note that we were persuaded by Petitioners' argument comparing this matter with case law concerning *nunc pro tunc* appeals. They reason that the time to take an appeal may be extended when the failure to comply with a deadline is the result of the negligent conduct of an administrative agency. Petitioners assert that negligence in this case resulted in a poorly drafted summary order. While the issue in this case is not whether Petitioners filed a timely appeal, but rather whether they timely requested a hearing in order to fully litigate the issues discussed in the Summary Order, both scenarios deal with a liberal construction of rigidly drafted deadlines.

Slip Op., 10/2/07 at 6–8 (citations and footnotes omitted). This matter is now before us for disposition.[3]

On appeal, Petitioners argue the Commission erred in refusing to vacate the "deceptively worded" Summary Order, and in refusing to provide them a hearing at which they could challenge the accusations in the Summary Order.

At the outset, we note, Senior Judge Flaherty reviewed this case at the summary relief stage. Pennsylvania Rule of Appellate Procedure 1532(b), which allows for summary relief, states (with emphasis added): "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment *if the right of the applicant thereto is clear.*"

█ Our standard of review is different now. Specifically, our review of Petitioners appeal of the Commissions action is limited to a determination of whether constitutional rights were violated, errors of law were committed, and whether the Commission's necessary findings were supported by substantial evidence. *Stas v. Pa. Sec. Comm'n,* 910 A.2d 125 (Pa. Cmwlth.2006), *appeal denied,* 593 Pa. 758, 932 A.2d 77 (2007).

█ Petitioners first argue the Commission erred in refusing to either vacate the Summary Order or grant them a hearing to contest the accusations set forth in the Order. They assert the deceptively worded hearing rights language contained in the Summary Order led them to reasonably believe they could request a hearing only if they desired to continue to engage in what the Commission already determined to be illegal behavior pursuant to the Summary Order. Stated another way, Petitioners contend the Commission was

---

**3.** We subsequently denied the Commission's motion for protective order as moot based on the dismissal of the original jurisdiction portion of Petitioners' petition for review.

forcing them to admit to the illegal conduct. As such, Petitioners maintain, they initially opted against requesting a hearing.

Petitioners argue by the time they recognized the Summary Order could have deleterious effects on their livelihoods, the statutory period in which they were required to request a hearing lapsed by a period of only 15 days. Under similar circumstances, Petitioners assert, Pennsylvania Courts routinely grant *nunc pro tunc* relief.[4] In addition, Petitioners assert that in his single judge opinion, Senior Judge Flaherty recognized the persuasiveness and applicability of *nunc pro tunc* appeal case law to the facts presented here. Petitioners' arguments fail.

Pursuant to Section 606(c.1) of the Securities Act:

Whenever the [C]ommission finds that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this act or any rule or order thereunder, the [C]ommission may order such person to cease and desist from such act or practice. *The order may be issued summarily without notice or hearing.* Upon issuance of a summary order, the [C]ommission shall promptly provide the order to the person against whom it is issued. The order shall contain findings of fact and conclusions of law and *include a notice affording the person an opportunity for a hearing under section 607(a).*

70 P.S. 1–606(c.1) (emphasis added). In turn, Section 607(a) states, in relevant part:

Within thirty days after receipt of a summary order issued under section 606(c.1), the person against whom the order was issued and entered may file with the [C]ommission a written request for a hearing in respect to *any matters determined by the order.* After hearing, the [C]ommission may determine to rescind, modify or vacate the summary order or make it a final order. *If no hearing is requested or a request for a hearing is filed untimely, the summary order shall be deemed to be a final order.*

70 P.S. 1–607(a) (emphasis added).

Of further note, Section 607(d) provides, as pertinent: Orders of the [C]ommission shall be subject to judicial review in accordance with law, but *orders originally entered without a hearing may be reviewed only if the party seeking review has filed a request for a hearing within the time provided under subsection (a).* 70 P.S. 1–607(d) (emphasis added).

We reject Petitioners' assertion that the Summary Order was deceptively worded so as to lead them to believe they could request a hearing only if they desired to continue to engage in what the Commission already determined to be illegal behavior under the Order. The Summary Order is sufficiently clear to inform Petitioners of their right to request a hearing and the period in which to do so. In addition, the Summary Order is not so ambiguous so as to lead Petitioners to

---

**4.** *E.g., Roderick v. Civil Serv. Comm'n*, 76 Pa. Cmwlth. 329, 463 A.2d 1261, 1263 (1983) (citation omitted) ("an appeal nunc pro tunc was properly allowed [ ] in those circumstances where it was shown that the delay in taking the appeal was the result of wrongful, negligent or fraudulent conduct on the part of the administrative agency involved."); *Flynn v. Unemployment Comp. Bd. of Review*, 192 Pa.Super. 251, 159 A.2d 579, 580–81 (1960) (citation omitted) ("In cases where a claimant is unintentionally misled by an official who is authorized to act in the premises, the time may also be extended when it is possible to relieve an innocent party of injury consequent on such misleading act.")

reasonably believe that by requesting a hearing they were admitting to violating the Securities Act.

The relevant language of the Summary Order states (with emphasis added):

Within thirty (30) days after receipt of written notification that this Order has been issued, Respondent(s) <u>desiring to engage in said acts or practices</u> may file a written request with the Secretary of the Commission at the Commission's Harrisburg office that a hearing be held to consider rescinding the Order.

R.R. at 3a. Petitioners focus on the underlined phrase above in support of their argument that requesting a hearing would mean they were admitting their desire to engage in illegal acts. However, when read in context, it is clear the phrase "said acts or practices" refers to the facts of stock sales to Pennsylvania residents without registration.

More importantly, Petitioners do not specifically dispute any of the facts in the Summary Order. Nor do Petitioners offer an explanation of what other facts, if any, they would prove at a hearing on the merits. Because Petitioners do not dispute any of the facts recounted in the Summary Order, it is unclear what purpose a hearing would serve.

As to their *nunc pro tunc* argument, Petitioners assert "[b]y the time [they] recognized that the Summary Order could have deleterious effects upon their livelihoods, the statutory timeframe in which [they] were required to request a hearing had already passed by a period of only fifteen (15) days." Petitioners' Br. at 8. Petitioners also argue an administrative breakdown occurred here because of the manner in which the Commission drafted the hearing rights language in the Summary Order. They contend the "unquestionable deceptiveness of the hearing rights language led to [their] delay in requesting a hearing." Petitioners' Br. at 13.

Petitioners argue these circumstances entitle them to *nunc pro tunc* relief, but they did not request *nunc pro tunc* relief before the Commission. Moreover, in their brief to this Court, Petitioners do not seek a remand in order to prove the fact, cause and duration of their claimed confusion, none of which appears in a record. Rather, they seek a hearing before the Commission on the merits of the Summary Order.

Further, although Petitioners claim *nunc pro tunc* relief is justified because they did not recognize the Summary Order could have "deleterious effects" on their livelihoods until 15 days after the lapse of the statutory period in which to request a hearing, Petitioners offer no explanation as to how the Summary Order deceived them as to its effects.

To that end, we believe the effects of the Summary Order are clear. Simply stated, the Summary Order requires Petitioners to stop selling securities to Pennsylvania residents until they are registered under Section 301(a) of the Securities Act. Thus, Petitioners are required to either stop selling stock to Pennsylvania residents or to register. There is nothing in the Summary Order that obscures these effects.

■ Petitioners also contend the need for *nunc pro tunc* relief is heightened here because they never had an opportunity to be heard before the Commission. They assert that an opportunity to be heard is a basic requirement of due process, and this requirement applies to administrative agencies. *Infinity Broad. Corp. v. Pa. Human Rels. Comm'n*, 893 A.2d 151, 157 (Pa.Cmwlth.), *appeal denied*, 588 Pa. 785, 906 A.2d 545 (2006). They further point out "[t]he most critical function in the ... adjudication of administrative cases is in the resolution of *disputed facts* ... [t]he fact finding process, therefore, must be

afforded the broadest dimensions of constitutional protection." *Shah v. State Bd. of Med.*, 139 Pa.Cmwlth. 94, 589 A.2d 783, 794 (1991) (citations omitted) (emphasis in original).

 Contrary to Petitioners' assertions, we discern no due process violation by the Commission here. Due process requires a person be provided notice and an opportunity to be heard prior to an adjudication affecting that person's rights. *Manor v. Dep't of Pub. Welfare*, 796 A.2d 1020 (Pa.Cmwlth.2002). It does not, however, confer an absolute right to be heard. *Goetz v. Dep't of Envtl. Res.*, 149 Pa. Cmwlth. 230, 613 A.2d 65 (1992). Further, due process is a "flexible" concept, not a technical one, and it imposes only such procedural safeguards as the situation warrants. *Veit v. N. Wales Borough*, 800 A.2d 391 (Pa.Cmwlth.2002). In addition, due process is a right that a party may waive. *Id.*

Here, Petitioners were offered an opportunity to be heard before the Summary Order became final. Had Petitioners timely requested a hearing, they would have had one. Petitioners' failure to timely seek an available hearing does not establish that the Commission violated their due process rights.

 This Court consistently holds the dismissal of a proceeding for a party's failure to prosecute or failure to appear at a hearing without good cause does not violate due process. *Burch v. Dep't of Pub. Welfare*, 815 A.2d 1143 (Pa.Cmwlth. 2002) (failure to prosecute matter and failure to respond to agency's notices and orders justifies dismissal of applicants action); *City of Phila., Water Revenue Bureau v. Frempong*, 744 A.2d 822 (Pa. Cmwlth.2000) (failure to appear for court-ordered pretrial status conference warrants dismissal of petitioner's appeals of municipal court judgments); *Green v. Harmony House N. 15th Street Housing Ass'n, Inc.*, 684 A.2d 1112 (Pa.Cmwlth. 1996) (failure to appeal at pre-trial conference warranted dismissal of appeal of arbitration award); *Greensburg Nursing & Convalescent Ctr. v. Dep't of Pub. Welfare*, 159 Pa.Cmwlth. 391, 633 A.2d 249 (1993) (repeated failures to file pre-hearing memorandum justifies dismissal of petitioner's appeal of agency action); *Goetz* (failure to prosecute or failure to comply with orders issued by agency warrants dismissal of action and does not impinge due process rights); *Cresco, Inc. v. Pa. Pub. Util. Comm'n*, 154 Pa.Cmwlth. 27, 622 A.2d 997 (1993) (failure to follow agency procedures and failure to timely respond to order to show cause justified denial of hearing request); *Lee v. Dept. of Pub. Welfare*, 105 Pa.Cmwlth. 211, 523 A.2d 1188 (1987) (failure to appear at hearing without good cause after denial of continuance justifies dismissal of appeal). Our analysis here is consistent with this authority.

Further, although Petitioners assert a critical function in the adjudication of administrative cases is the resolution of disputed facts, as noted above, Petitioners do not dispute any of the facts recounted in the Summary Order. Under such circumstances, the need for a hearing is not apparent. *Cf. Cresco* (agency's failure to hold a hearing prior to revoking company's certificate of public convenience was not an abuse of discretion; hearing was unnecessary because agency accepted all facts as true so that only question presented was one of law).

Accordingly, we affirm.

### *O R D E R*

AND NOW, this 30th day of April, 2008, the order of the Pennsylvania Securities Commission is **AFFIRMED.**